IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 06–cv–01206–EWN


FELIX L. GARCIA,

      Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner,
Social Security Administration,

      Defendant.

_____

**ORDER AND MEMORANDUM OF DECISION**
_____


      This is a social security benefits appeal.  Plaintiff Felix Garcia challenges the final decision

of the Commissioner of Social Security (the "Commissioner"), denying his application for

disability insurance benefits.[1]  Jurisdiction is premised upon 42 U.S.C. § 405(g) (2006).

---

[1]Although the caption of this case reflects the Commissioner to be Jo Anne B. Barnhart, a
new Commissioner, Michael J. Astrue, has been confirmed.

## FACTS

**1.    Medical Evidence**

Plaintiff was born on July 27, 1954, and was forty-eight years old at the onset of his alleged disability.[2]  (Admin. R. at 45 [filed Aug. 31, 2006] [hereinafter "Admin. R."].)  Plaintiff has a high school education and has worked in the vocationally relevant past as a forklift operator, tire repairer, and welder.  (*Id.* at 82–83, 88.)  Plaintiff alleges that he became unable to work beginning on April 11, 2003, due to severe asthma, emphysema, and hypertension.  (*Id.* at 82.)

**a.    Pre-Onset Medical Evidence**

Plaintiff's primary source of medical treatment through June 2004 was Pathway Medical Group in California, where he was treated primarily by Victoria Greblya, M.D., but also by other physicians in the group.  (*Id.* at 118–58, 207–21, 225–36.)  A chest X-ray on June 23, 1998 showed mildly hyperinflated lungs suggesting mild chronic obstructive pulmonary disease ("COPD").  (*Id.* at 140.)  On August 7, 2000, Munazza Khan, M.D., a doctor at Pathway Medical Group, noted Plaintiff should not work with paints because it triggered asthma attacks.  (*Id.* at 242.)  Progress notes from August of 2000 and May of 2001 relay that Plaintiff experienced wheezing.  (*Id.* at 127, 128.)  On May 16, 2001, Dr. Greblya assessed Plaintiff with asthma and arthralgia,[3] as well as decreased range of motion in the knee and hip secondary to pain.  (*Id.* at

---

[2]In his application for disability insurance, Plaintiff alleged an onset date of December 17, 2001.  (Admin. R. at 45.)  He later amended that date to April 11, 2003.  (*Id.* at 82.)

[3]Arthralgia is pain in a joint or joints.  1–A Attorneys' Dictionary of Medicine 10926 (Matthew Bender & Co. 2005).

127.)  Plaintiff was prescribed Advair and Serevent for his asthma.  (*Id.* at 124–25.)  On May 30,

2001, Dr. Richard Ralls, M.D. noted Plaintiff had "done well" on Serevent.  (*Id.* at 125.)  On July

20, 2001, Dr. Greblya noted Plaintiff was feeling "much better" on Advair, but still experienced

arthralgia.  (*Id.* at 123.)  On December 17, 2001, Plaintiff was involved in a work-related injury

involving his testicles, which required him to undergo a spermatocelectomy.[4]  (*Id.* at 197–99.)

### b.  *Post-Onset Medical Evidence*

On May 27, 2003, Dr. Greblya instructed Plaintiff to take Advair daily for his COPD.  (*Id.*

at 225.)  On August 14, 2003, Norton Hering, M.D., Plaintiff's treating physician for his testicular

injury, opined that Plaintiff was permanently precluded from: (1) lifting over fifty to sixty pounds;

(2) repetitive bending, stooping, and carrying over fifty pounds; and (3) climbing up and down

over engines.  (*Id.* at 198.)  The doctor concluded: "The patient is a qualified injured worker.  I

feel that he should be afforded the opportunity of a vocational rehabilitation counselor so that he

can be trained into some type of work activity where he can again be gainfully employed in the

open labor market."  (*Id.*)  Dr. Hering also noted that Plaintiff complained of intermittent "slight"

pain in his left testicle.  (*Id.*)

On September 2, 2003, Dr. Greblya treated Plaintiff for exacerbation of his asthma.  (*Id.* at

118.)  She noted Plaintiff: (1) was complaining of tiredness and shortness of breath on exertion

and at rest; (2) was wheezing upon expiration; (3) had "moderate-to-severe" asthma; (4) would

---

[4]A spermatocelectomy involves the removal of an abnormal dilation of a duct in the
testicle.  5–S ATTORNEYS' DICTIONARY OF MEDICINE 4807–08 (Matthew Bender & Co. 2005).

start taking Singulair, another asthma medication; and (5) was moving to Colorado.  (*Id.*)

Plaintiff underwent pulmonary function tests that day which showed a "severe obstruction as well

as low vital capacity, possibly from a concomitant restrictive defect."  (*Id.* at 146.)

On November 3, 2003, Plaintiff underwent a urological evaluation by Leon Goldberg,

M.D. regarding his testicular injury.  (*Id.* at 159–64.)  Dr. Goldberg concluded that Plaintiff had

"no [u]rological work restrictions."  (*Id.* at 164.)

Sometime in 2004, Plaintiff moved from California to Cortez, Colorado.  On April 27,

2004, Plaintiff reported to the Social Security Administration that he was using his asthma inhaler

less than prescribed due to lack of insurance.  (*Id.* at 55.)  Additionally, he stated his testicular

injury was "resolved and was causing him no pain."  (*Id.*)

On July 13, 2004, Steven Blonick, M.D. evaluated Plaintiff at the request of the Social

Security Administration.  (*Id.* at 165–77.)  Plaintiff complained that because of his asthma and

COPD: (1) he had "severe fatigue . . . all the time;" (2) "if he trie[d] to do any lifting, he [could]

accomplish it, but then afterwards [was] winded, and very fatigued, requiring rest for hours;" and

(3) "any type of fright, or anxiety cause[d] exacerbation of his respiratory condition."  (*Id.* at

174.)  Dr. Blonick noted that Plaintiff took his asthma medication at a lower dose than prescribed

because he was afraid he would run out of medication.  (*Id.*)  On physical exam, Dr. Blonick

reported that Plaintiff's lungs were clear, and although his expiratory phase was prolonged,

Plaintiff was not wheezing.  (*Id.*)  The doctor then made the following assessment: "history of

severe COPD, with consequent limited exercise capacity.  Mild hypertension.  Seemingly normal

cardiac function. . . .  His ability to perform work related activities would be limited based on the

COPD.  Pulmonary function tests should confirm the history of severe COPD."  (*Id.* at 174–75.)

Plaintiff completed a daily activity questionnaire dated May 6, 2004 which relayed the

following information.  (*Id.* at 106–09.)  On and off since 1992, and worsening in 2003, Plaintiff

became "very exhausted when he exert[ed] himself.  (*Id.* at 106.)  He was able to take out the

trash at home as long as he "[took] his time."  (*Id.*)  He spent his time watching television, being

outdoors, and gardening.  (*Id.*)  He described his ability to concentrate as "slow" and stated he

had to read something more than once to comprehend it.  (*Id.*)  His spouse generally cooked for

him, but Plaintiff did sometimes prepare sandwiches and soup.  (*Id.* at 107.)  He had to rest

periodically throughout the day and could only sleep for two-to-six-hour intervals during the

night.  (*Id.*)  Daily, Plaintiff spent time in his shop, which was located in his backyard.  (*Id.*)  He

seldom left his property by himself.  (*Id.*)  Further, he did not socialize much due to moodiness

and exhaustion.  (*Id.* at 107–08.)

On July 21, 2004, Edward Michael Canham, M.D., a non-examining consultative

physician, filled out a physical assessment form opining that Plaintiff could: (1) occasionally lift

twenty pounds; (2) frequently lift ten pounds; (3) stand and/or walk six hours in an eight-hour

day; (4) sit six hours in an eight-hour day; (5) push and pull to an unlimited degree; (6) and

occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  (*Id.* at 179–80.)

Dr. Canham found Plaintiff should never climb ropes, ladders, or scaffolding and should avoid

concentrated exposure to extreme cold, heat, wetness, humidity, fumes, odors, dust, gases, and

poor ventilation.  (*Id.* at 180–82.)  Finally, the doctor noted Plaintiff was non-compliant with medical advice to quit smoking.  (*Id.* at 179.)

Plaintiff stated in his disability report for his appeal, dated August 19, 2004, that his condition was: (1) causing increased fatigue, depression, and breathing difficulties; (2) limiting his ability to engage in his "regular activities;" and (3) limiting his ability to concentrate due to his headaches and difficulty breathing.  (*Id.* at 91.)  He stated that he was able to take care of his personal hygiene, but that the process was lengthy due to fatigue and breathing problems.  (*Id.* at 95.)  Plaintiff's wife took care of cooking, laundry, and driving.  (*Id.*)  Plaintiff wrote: "My body is getting weaker.  My breathing is worse [due] to lack of oxygen.  I cannot do any physical activities and [due] to my medication[,] I cannot concentrate."  (*Id.*)  Finally, Plaintiff stated he had only seen the Social Security Administration doctors since moving to Colorado because he did not have money or insurance.  (*Id.* at 97.)

On January 18, 2005, Plaintiff began treatment with Kim Fairly, M.D. in Cortez.  (*Id.* at 260.)[5]  She assessed Plaintiff with exacerbated severe asthma and COPD and noted that he smoked half of a pack of cigarettes each day and was not taking his Singulair.  (*Id.*)  The doctor prescribed Plaintiff a new asthma medication.  (*Id.*)  Plaintiff returned to Dr. Fairley on January 25, 2005 and stated that he was feeling significantly better on the new medication.  (*Id.* at 259.)  A lung exam revealed Plaintiff had poor air movement consistent with severe COPD.  (*Id.*)  Dr. Fairley opined that Plaintiff's COPD was improving with his current medications.  (*Id.*)

---

[5]It appears the initial medical record was misdated as January 18, 2004 — when Plaintiff was still in California.  (*Id.* at 260.)

On May 4, 2005, Dr. Fairley filled out a medical source statement for Plaintiff.  (*Id.* at 262–63.)  Her diagnosis was "severe COPD/asthma [with] severe obstructive defect documented in the July 2004 pulmonary function tests" and "testicular pain [with] lifting."  (*Id.* at 262.)  Dr. Fairley opined Plaintiff could: (1) lift twenty pounds occasionally and ten pounds frequently; (2) stand two hours at a time for a total of two hours in an eight-hour day; (3) sit two hours at a time for a total of six hours in an eight-hour day; (4) occasionally bend, stoop, crawl, kneel, and climb stairs and ladders; (5) use his hands for simple grasping and fine manipulations, but not for repetitive pushing and pulling; (6) use his legs for repetitive movements if the controls were not stiff or heavy; and (7) reach and work above shoulder level.  (*Id.* at 262–63.)  The doctor further opined that Plaintiff could never squat and needed to recline every two hours during the day to relieve his symptoms.  (*Id.* at 262.)  Additionally, Dr. Fairley noted that Plaintiff could tolerate no more than two hours of work per day and that his condition varied so as to cause him to be unable to work ten or more days each month.  (*Id.* at 263.)  The basis for her opinion was: "Severe COPD Varies — some days shortness of breath just walking in house, some days not as bad." (*Id.*)  Finally, the doctor found Plaintiff's condition caused him fatigue that impaired his ability to concentrate on work tasks and limited his endurance.  (*Id.*)

## 2.    *Procedural History*

On February 18, 2004, Plaintiff filed an application for disability insurance benefits. (*Id.* at 45–47.)  On July 22, 2004, the Social Security Administration denied Plaintiff's application. (*Id.* at 31–34.)  On August 23, 2004, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 35–36.)  On June 6, 2005, the ALJ held a hearing, at which Plaintiff and a vocational expert ("VE") testified. (*Id.* at 282–317.)

Plaintiff testified as follows.  He began having breathing problems in approximately 1991, but the severity of the problems have worsened over time. (*Id.* at 298.)  He stopped working approximately six weeks prior to the date of the onset of his alleged disability due to a conflict in his job, rather than due to his health. (*Id.* at 286–89, 292.)  Although Plaintiff moved from sea level to nearly 6,000 feet in elevation, he stated his breathing problems were no worse in Colorado, considering the smog in California. (*Id.* at 89.)  He claimed he never returned to work because of his breathing problems, which gave him trouble walking, lifting, and concentrating, as well as made him feel exhausted. (*Id.* at 295, 299.)  Further, Plaintiff's testicular injury caused him pain upon lifting twenty pounds or more that shot into his stomach and down his left leg. (*Id.* at 296.)  Plaintiff admitted to being a smoker but claimed to have reduced the amount he was smoking and to have tried to quit on several occasions using varying methods. (*Id.* at 298.)

Regarding Plaintiff's breathing problems, he testified to having more bad days than good ones. (*Id.* at 299.)  On his good days, Plaintiff woke up, drank coffee, got dressed, and helped his wife with all the small chores around the house. (*Id.*)  He then went to his small mechanics shop where he worked on wood, cut metal, and sometimes did a bit of welding. (*Id.* at 299–300.)

Plaintiff spent sixty-five to seventy percent of his time in the shop on a daily basis if he was not resting. (*Id.* at 308.) The shop contained a broken riding lawnmower, a stove that Plaintiff had been welding on for the past two years, a motorcycle, a press bench, some iron, and a bandsaw. (*Id.* at 307–08.) When Plaintiff was in his shop, he did a lot of resting and a little work. (*Id.* at 309.) When Plaintiff got tired, he would sit on his stool in the shop and look at the view. (*Id.* at 299, 310.) How often he got tired varied, but on a good day he would be active for up to two hours before needing to rest. (*Id.* at 299–300.) He had to lie down in his house due to exhaustion twice a day for thirty minutes to one and one-half hours, depending upon his breathing. (*Id.* at 300.) On a bad day, Plaintiff had trouble getting dressed and cleaned up, or doing a single chore. (*Id.* at 301.) Sometimes he did not leave the house at all. (*Id.*)

Plaintiff used inhalers and nebulizers for his lungs. (*Id.* at 301.) He experienced side effects of crankiness and hyperness. (*Id.* at 302.)

The VE testified at the hearing regarding his review of the vocational exhibits in Plaintiff's file. (*Id.* at 306–07, 312–17.) The VE testified that Plaintiff's past work as: (1) a tire repairer was a heavy with a specific vocational preparation ("SVP")[6] of three; (2) welder was medium with an SVP lower than six; and (3) forklift operator was medium with an SVP of three. (*Id.* at 307.)

---

[6]SVP is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dikeman v. Halter*, 245 F.3d 1182, 1186 n.2 (10th Cir. 2001) (citation and internal quotation marks omitted).

Additionally, the VE opined on a series of hypothetical questions posed by the ALJ. (*Id.* at 312–17.) The VE testified that an individual of Plaintiff's age, education, and vocational history who (1) was limited to light work, (2) could stand, walk, and sit six hours in an eight-hour day, but required the ability to alternate positions as necessary, (3) could push and pull to a limited degree, (4) could not climb ladders, ropes, and scaffolds, (5) could occasionally climb stairs and ramps, balance, stoop, crouch, kneel, and crawl, and (6) should avoid concentrated exposure to temperature extremes, wetness, humidity, fumes, odors, dust, gases, and poor ventilation, could not perform Plaintiff's past relevant work. (*Id.* at 312.) At the ALJ's request, the VE identified other light duty jobs available in the regional or national economy that such an individual could perform which had sit/stand options and would not involve excessive standing. (*Id.* at 312–13.) The VE identified jobs such as a production assembler, storage facility rental clerk, ticket taker, and companion. (*Id.* at 313–14.) The VE further opined that an individual who had to lie down two times a day for thirty minutes to one and one-half hours, as Plaintiff testified he required, would eliminate most, if not all, jobs. (*Id.* at 314.) The VE stated an individual who could not work fifteen to twenty days each month would be precluded from all gainful employment. (*Id.*) Finally, the VE testified Plaintiff did not have transferable skills to sedentary work. (*Id.* at 315.)

On September 16, 2005, the ALJ issued a decision reflecting his finding that Plaintiff was not disabled within the meaning of the Social Security Act because he retained the residual functional capacity ("RFC") to perform the full range of light work. (*Id.* at 15–22.) In reaching this conclusion, the ALJ first found that Plaintiff had not engaged in substantial gainful activity

since the alleged onset of his disability.  (*Id.* at 16.)  The ALJ next determined that Plaintiff's

hypertension, asthma, and COPD were medically determinable, severe impairments.  (*Id*. at

17–18.)  Despite their severity, the ALJ determined that the impairments were not sufficiently

severe to meet or medically equal any of the impairments listed in Appendix 1, Subpart P,

Regulations Number 4.  (*Id*. at 18.)  Additionally, the ALJ found Plaintiff's complaints concerning

his impairments and their impact on his ability to work were "not entirely reliable."  (*Id.*)

Based on the evidence presented, the ALJ concluded that Plaintiff had the RFC "for light

work with never using ladders, ropes, or scaffolds, but occasionally using ramps and stairs, and

occasional balancing, stooping, kneeling, crouching, and crawling."  (*Id.* at 19.)  In accord with

this RFC, the ALJ determined that Plaintiff could perform "the full range of light work," and,

therefore, was not disabled.  (*Id.* at 21.)

On April 27, 2006, the Appeals Council affirmed the ALJ's decision, making it the final

administrative decision for the purposes of judicial review.  (*Id.* at 7–9.)  On August 31, 2006,

Plaintiff filed a complaint in this court challenging the Commissioner's denial of disability benefits.

(Compl. [filed Aug. 31, 2006].)  On October 17, 2006, Plaintiff filed his opening brief.  (Pl.'s

Opening Br. [Oct. 17, 2006] [hereinafter "Pl.'s Br."].)  On November 22, 2006, the

Commissioner filed her responsive brief.  (Def.'s Resp. Br. [filed Nov. 22, 2006] [hereinafter

"Def.'s Resp."].)  On December 14, 2006, Plaintiff filed her reply brief.  (Pl.'s Reply Br. [filed

Dec. 14, 2006] [hereinafter "Pl.'s Reply"].)

## ANALYSIS

### 1.      *Standard of Review*

Section 405(g) of the Social Security Act establishes the scope of this court's review of

the Commissioner's denial of disability insurance benefits.  *See* 42 U.S.C. § 1383(c)(3) (2006)

(incorporating review provisions of 42 U.S.C. § 405[g]).  Section 405(g) provides, in relevant

part, that:

> [t]he findings of the Commissioner of Social Security as to any fact,
> if supported by substantial evidence, shall be conclusive, and where
> a claim has been denied by the Commissioner of Social Security or
> a decision is rendered under subsection (b) of this section which is
> adverse to an individual who was a party to the hearing before the
> Commissioner of Social Security, because of failure of the claimant
> or such individual to submit proof in conformity with any regulation
> prescribed under subsection (a) of this section, the court shall
> review only the question of conformity with such regulations and
> the validity of such regulations.

42 U.S.C. § 405(g) (2006).  Thus, this court's review is limited to determining whether the record

as a whole contains substantial evidence supporting the Commissioner's decision.  *See id.*;

*Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992).  The

court must uphold the Commissioner's decision if it is supported by substantial evidence.  *See*

*Dollar v. Bowen*, 821 F.2d 530, 532 (10th Cir. 1987).  This court cannot reweigh the evidence

nor substitute its judgment for that of the ALJ.  *Jordan v. Heckler*, 835 F.2d 1314, 1316

(10th Cir. 1987).  That does not mean, however, that my review is merely cursory.  To find that

the ALJ's decision is supported by substantial evidence, the record must include sufficient relevant

evidence that a reasonable person might deem adequate to support the ultimate conclusion.  *Frey*

*v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).  A decision is not based on substantial evidence if

it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence

supporting it.  *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985).  The ALJ's decision is also

subject to reversal for application of the wrong legal standard.  *Bernal v. Bowen*, 851 F.2d 297,

299 (10th Cir. 1988); *Frey*, 816 F.2d at 512.

**2.      *Evaluation of Disability***

The qualifications for disability insurance benefits under the Social Security Act are that

the claimant meets the insured status requirements, is less than sixty-five years of age, and is

under a "disability."  *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).  The Social Security

Act defines a disability as an inability "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than

twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2006).  In proving disability, a claimant must make

a *prima facie* showing that heis unable to return to the prior work he has performed.  *Huston v.*

*Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).  Once the claimant meets that burden, the

Commissioner must show that the claimant can do other work activities and that the national

economy provides a significant number of jobs the claimant could perform.  *Frey*, 816 F.2d at

512.

The Commissioner has established a five-step process to determine whether a claimant

qualifies for disability-insurance benefits.  *See* 20 C.F.R. § 404.1520 (2007); *Bowen v. Yuckert*,

482 U.S. 137, 140–42 (1987) (describing five-step analysis).  A claimant may be declared disabled

or not disabled at any step; and, upon such a determination, the subsequent steps may be disregarded. *See* 20 C.F.R. § 404.1520(a) (2007); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). First, the claimant must demonstrate that he is not currently involved in any substantial gainful activity. 20 C.F.R. § 404.1520(b) (2007). Second, the claimant must show a medically severe impairment (or combination of impairments) which limits his physical or mental ability to do basic work activities. *Id.* § 404.1520(c). At the third step, if the impairment matches or is equivalent to established listings, then the claimant is judged conclusively disabled. *Id.* § 404.1520(d). If the claimant's impairments are not equivalent to the listings, the analysis proceeds to the fourth step. At this stage, the claimant must show that the impairment prevents him from performing work he has performed in the past. *See Williams*, 844 F.2d at 751 (citations omitted). If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e) (2007); *Williams*, 844 F.2d at 751. The fifth step requires the Commissioner to demonstrate that: (1) the claimant has the RFC to perform other work based on the claimant's age, education, past work experience; and (2) there is availability of that type of work in the national economy. *See* 20 C.F.R. § 404.1520(f) (2007); *Williams*, 844 F.2d at 751.

### 3.   *Disability Determination*

Plaintiff sets forth three arguments in support of his contention that the ALJ's decision is erroneous. Plaintiff argues the ALJ erred in: (1) failing to give appropriate weight to the opinions of Plaintiff's physicians; (2) assessing Plaintiff's credibility; and (3) assessing Plaintiff's RFC. (Pl.'s Br. at 14–20.) I address each argument below.

### a.        The Opinions of Plaintiff's Physicians

Plaintiff contends the ALJ gave insufficient weight to the opinion of Dr. Fairley, Plaintiff's

treating physician, as well as Dr. Blonick, a consultative examining physician.  (*Id.* at 14–23.)  I

begin with Plaintiff's treating physician.  It is well established that an ALJ is required to give

controlling weight to a treating physician's well supported opinion, so long as it is supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

other substantial evidence of record.  *See* 20 C.F.R. § 404.1527(d)(2) (2007); *Hamlin v.*

*Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); *Frey*, 816 F.2d at 513.  If an ALJ decides not to

give a treating physician's opinion controlling weight, the ALJ must consider a series of factors in

determining the amount of weight to give the opinion, including the degree to which the opinion is

supported by relevant evidence and the opinion's consistency with the record as a whole.  *See* 20

C.F.R. § 404.1527(d)(2)–(6) (2007); *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d

288, 290 (10th Cir. 1995).  Should an ALJ choose to disregard the opinion of a treating physician,

the ALJ must set forth "specific, legitimate reasons" for doing so.  *Hamlin*, 365 F.3d at 1215.

The ALJ gave Dr. Fairley's opinions "little weight" because: (1) she "provided very little

explanation of the evidence that was relied upon in forming those opinions;" and (2) "more

signficant[,] . . . the opinions were contradictory."  (*Id.* at 19.)  The ALJ explained, "[i]t was

noted on one page [of Dr. Fairley's medical source statement] that [Plaintiff] could work only two

hours per day and on another page that he could work eight hours per day."  (*Id.*)  Plaintiff argues

the ALJ's stated reasons for rejecting Dr. Fairley's opinion are not legitimate because: (1) Dr.

Fairely gave specific diagnoses as the basis for her opinions; and (2) her opinions were not

internally inconsistent, but — instead — reflected the varying nature of Plaintiff's symptoms. (Pl.'s Br. at 16–17; Pl.'s Reply at 2.)  The Commissioner counters that it was proper for the ALJ to give little weight to Dr. Fairley's opinion considering that she had contact with Plaintiff on at most three occasions, and that she provided minimal explanation for her assessment of Plaintiff's limitations.  (Def.'s Resp. at 11–12.)  I agree with Plaintiff.

First, Dr. Fairley's medical source statement was relayed through a pre-printed form which left two lines blank for the doctor to explain the claimant's diagnoses, which were defined as "all significant physical impairments supported by tests and clinical signs."  (Admin. R. at 262–63.)  Dr. Fairley filled more than those two lines explaining Plaintiff's diagnoses were: (1) "severe COPD/asthma" with "severe obstructive defect documented [July 2004]" and through pulmonary function tests; and (2) testicular pain from lifting.  (*Id.* at 262.)  The Commissioner does not and cannot contend that these impairments and the tests that confirm the severe COPD/asthma are not well-documented in the record.  (*See* Def.'s Resp.)  What more the Commissioner would have Dr. Fairley write to convey the basis for the limitations noted in her medical source statement eludes this court.  I find the doctor provided sufficient explanation for the basis of her opinion regarding Plaintiff's limitations.

The ALJ's concerns regarding the perceived inconsistencies in Dr. Fairley's opinion fares no better.  It is true that Dr. Fairely noted on one page of her assessment that Plaintiff could stand or walk for two hours in an eight-hour workday and could sit for two hours in an eight-hour workday, and notes on the next page that Plaintiff could work no more than two hours per day. (*Id.* at 262–63.)  However, that Plaintiff may have the capacity to sit six hours in a day and stand

two hours in a day simply is not inconsistent with a finding that Plaintiff has the capacity to

engage in "*work*" only two hours out of an eight-hour workday.  Dr. Fairley made clear that the

work limitation is based on Plaintiff's pain and shortness of breath resulting from his severe

COPD.  (*Id.* at 263.)  That pain and shortness of breath may not require Plaintiff to rest supine,

but may limit Plaintiff from — for instance — concentrating so as to be able to perform work

effectively.  Accordingly, I find the ALJ's conclusion that Dr. Fairely's opinion was internally

inconsistent is not supported by substantial evidence.[7]

Any other explanations suggested by the Commissioner to bolster the ALJ's rejection of

Dr. Fairley's opinion are wholly unpersuasive to this court, as the ALJ made very clear the

specific reasons for his rejection.  (*See* Admin. R. at 19.)  The Commissioner decidedly "may not

create post-hoc rationalizations to explain the [ALJ's] treatment of evidence when that treatment

is not apparent from the [ALJ's] decision itself."  *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th

Cir. 2005).

Next, I address the ALJ's treatment of Dr. Blonick's opinion.  Plaintiff contends that the

ALJ did not give the opinion sufficient weight.  (*Id.* at 16–17.)  An ALJ is required to evaluate

every medical opinion he receives.  20 C.F.R. § 404.1527(d) (2007).  Moreover, an ALJ may rely

--------

[7]If the ALJ was unsure as to how Dr. Fairley's assessment of Plaintiff's ability to stand and walk interconnected with his assessed inability to "work" more than two hours each workday, the ALJ should have recontacted Dr. Fairley for clarification.  *See* 20 C.F.R. § 404.1512(e), (f) (2007) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved[or] the report does not contain the necessary information."); *see McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (finding ALJ had a statutory duty to obtain additional information before determining that a treating physician did not agree with the assessment he signed).

on statements from non-treating physicians in deciding whether a plaintiff has a medically

determinable impairment.  *Id.* § 404.1527(a)(2).  In the instant case, the ALJ reviewed Plaintiff's

complaints to Dr. Blonick and noted the doctor's conclusions that Plaintiff had COPD that would

limit his ability to work.  (Admin. R. at 17.)  Put simply, there is absolutely no evidence that the

ALJ did not consider and even *credit* Dr. Blonick's opinion.  The ALJ found Plaintiff's COPD

was a medically determinable, severe impairment.  (*Id.* at 21.)  The ALJ's RFC assessment

demonstrates that he viewed Plaintiff's impairments as substantially limiting his work abilities —

Plaintiff was limited to light work without the use of ladders, ropes, or scaffolds, and only

occasional stair and ramp climbing, balancing, stooping, kneeling, crouching, and crawling.  (*Id.*

at 22.)  Dr. Blonick did not state or even imply that Plaintiff's COPD would preclude him from

working nor did he suggest any specific physical limits due to COPD.  (*Id.*)  Given Dr. Blonick's

generalized statement that Plaintiff's ability to work would be limited based on his COPD, I find

the ALJ's RFC gave sufficient credence to the doctor's opinion.  Accordingly, while the ALJ

failed to apply appropriately the treating physician's rule with respect to Dr. Fairley's opinion —

necessitating remand — the ALJ's treatment of Dr. Blonick's opinion was not in error.

### b.    *Plaintiff's Credibility*

Next, Plaintiff argues the ALJ improperly assessed his credibility, giving too little weight

to his subjective complaints of pain.  (Pl.'s Br. at 17–20.)  The Commissioner counters that the

ALJ openly considered Plaintiff's subjective complaints and came to the well-supported

conclusion that Plaintiff was not entirely credible.  (Def.'s Resp. at 13–16.)  "'Credibility

determinations are peculiarly the province of the [ALJ].'"  *McGoffin*, 288 F.3d at 1254 (quoting

*Kepler v. Chater*, 68 F.3d 387, 391 [10th Cir. 1995]).  Indeed, credibility determinations made by

an ALJ are generally considered binding upon review.  *Gossett v. Bowen*, 962 F.2d 802, 807 (10th

Cir. 1988).  Such determinations "should not be upset if supported by substantial evidence."

*White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001).  However, "findings as to credibility

should be closely and affirmatively linked to substantial evidence and not just a conclusion in the

guise of findings."  *Huston*, 838 F.2d at 1133.  In assessing credibility, the ALJ may consider

several factors, including subjective measures of credibility and the consistency of the nonmedical

evidence with the medical record.  *See Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir.

1988).

Plaintiff attacks the ALJ's credibility assessment on multiple fronts.  First, he argues the

ALJ failed to discuss Plaintiff's complaints of fatigue and shortness of breath, as well as his need

to take breaks when completing chores.  (Pl.'s Br. at 18.)  I note as an initial matter that the ALJ

"is not required to discuss every piece of evidence," so long as the record demonstrates the ALJ

considered all of the relevant evidence.  *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir.

1996).  Regardless, the ALJ specifically acknowledged Plaintiff's complaints of breathing

problems and fatigue in his opinion.  (*See* Admin. R. at 16, 17, 18.)  Thus, Plaintiff's argument

that the ALJ "failed to discuss [Plaintiff's] fatigue [and] shortness of breath" is simply wrong.

(*See* Pl.'s Br. at 18.)  Moreover, the ALJ found Plaintiff suffered from the medically determinable,

severe impairments of asthma and COPD, which ineluctably implied a finding that Plaintiff

suffered from breathing problems.  (*Id.* at 21.)  A severe impairment is an "impairment or

combination of impairments which significantly limits [one's] physical or mental ability to do basic

work activities." 20 C.F.R. § 404.1520(c) (2007).  In light of the ALJ's determination that

Plaintiff's asthma and COPD significantly limited his physical ability to do basic work activities,

Plaintiff's contention that the ALJ failed to address his shortness of breath is unsupportable.

Regarding Plaintiff's alleged fatigue, the ALJ did limit Plaintiff to light work, with only occasional

climbing, stooping, kneeling, crawling, and crouching.  (Admin. R. at 22.)  Plaintiff fails to

identify any other specific limitations the ALJ was required to find based on complaints of fatigue.

(*See* Pl.'s Br. at 18.)  Based on the foregoing, I find the ALJ's treatment of Plaintiff's complaints

of fatigue and shortness of breath was not in error.[8]

Second, Plaintiff attacks the ALJ's finding that Plaintiff's household chores suggest he

may not be as limited in his ability to work as he claims.  (Pl.'s Br. at 19–20; *see* Admin. R. at 19.)

First, I note Plaintiff has taken the ALJ's remarks somewhat out of context, as the ALJ states:

"[Plaintiff] also described performing household chores *and* working in his shop, activities that are

not limited to the extent one would expect, given his complaints of disabling symptoms and

limitations."  (Admin. R. at 19 [emphasis added].)  Thus, the ALJ found Plaintiff's household

chores *in combination* with his workshop activities suggest some credibility issues.  (*See id.*)

Plaintiff's daily activities are one of the many factors an ALJ may consider when making a

determination regarding the credibility of Plaintiff's subjective complaints of pain.  *Swanson v.*

*Barnhart*, No. 06-5024, 2006 U.S. App. LEXIS 19965, at *5 (10th Cir. Aug. 2, 2006) (citing

*Huston*, 838 F.2d at 1132); *see Fessler v. Apfel*, 11 F. Supp. 2d 1244, 1251 (D. Colo. 1998)

---

[8]Plaintiff's need for breaks while doing chores is simply another iteration of his complaints
of fatigue and shortness of breath and, thus, does not warrant separate treatment.

(finding an ALJ may properly assess credibility based on "inconsistencies between [the plaintiff's] testimony, the medical evidence and [his] daily activities"). I agree with Plaintiff that his testimony reporting that he helped his wife with household chores on his "good days," which he alleges occurs less than half of the time, is not substantial evidence supporting the ALJ's credibility determination. *See Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (finding "the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain"). Nonetheless, these activities, when viewed in combination with Plaintiff's testimony that, on a daily basis, he spent sixty-five to seventy percent of his time in his shop — sitting on his stool or working on small projects — may well suggest, along with other record evidence, that Plaintiff's pain was not as disabling as he would have the court believe.

Third, Plaintiff argues the ALJ should not have made a negative inference from Plaintiff's voluntary departure from his job for reasons other than his health. (Pl.'s Br. at 19.) The ALJ did find Plaintiff's testimony that he left his job due to a conflict with his employer, rather than for reasons associated with his health, "raises a question as to whether his continuing unemployment is actually due to medical impairments." (Admin. R. at 19.) Plaintiff complains that the ALJ failed to consider the many reasons Plaintiff stated for quitting his job, including poor training, an inability to perform his prior work, and Plaintiff's sense that he would be terminated if he did not quit. (Pl.'s Br. at 19.) I remind Plaintiff that there is absolutely no rule of law mandating that the ALJ discuss all the minutie of Plaintiff's testimony, so long as the opinion shows that he considered the relevant evidence. *Clifton*, 79 F.3d at 1009–10. Moreover, in this particular case, Plaintiff explicitly testified that he "left [his job] for reasons other than those connected with [his]

health." (Admin. R. at 289.)  Plaintiff did not recant this statement, and it was clearly proper for the ALJ to rely on it in assessing the reasons for Plaintiff's continued unemployment.  That Plaintiff may have had other reasons for leaving his job does not somehow counteract his testimony that he did not leave due to his health.

Fourth, Plaintiff argues the ALJ should not have drawn a negative inference from Plaintiff's failure to quit smoking.  (Pl.'s Br. at 19; *see* Admin. R. at 19.)  The ALJ acknowledged Plaintiff's testimony that he had tried to quit smoking on several occasions, using a variety of tools, but was unsuccessful.  (Admin. R. at 17.)  However, the ALJ did not make a finding that Plaintiff had the capacity to quit smoking voluntarily.  (*See id.* at 19.)  Absent such a finding, the ALJ should not have inferred that Plaintiff's failure to quit indicated a lack of alleged symptoms. *See Gordon v. Schweiker*, 725 F.2d 321, 236 (4th Cir. 1984) (finding that "benefits cannot be denied for failure to stop smoking absent a finding that the claimant could voluntarily stop smoking [*i.e.*, was not addicted to cigarettes]"); *accord Walker v. Shalala*, No. 92–1093–MLB, 1993 U.S. Dist. LEXIS 9746, at *16–18 (D. Kan. July 12, 1993); *see also Rogers v. Sec'y of Health & Human Servs.*, 786 F.2d 1166, 1166 n.2 (6th Cir. 1986) (questioning the ALJ's reliance on the plaintiff's "refusal" to quit smoking in determining his RFC).  *But see Hirst v. Garnder*, 365 F.2d 125 (7th Cir. 1966) (finding failure to quit smoking is a justifiable ground for refusing benefits).

Finally, Plaintiff argues the ALJ improperly suggested that Plaintiff's non-compliance with medication and limited medical treatment showed his symptoms were not as serious as he alleged.  (*Id.* at 18–19.)  There is record support for Plaintiff's claim that his limited medical treatment and

non-compliance with medication was for reasons other than lack of symptoms.  He told Dr.

Blonick and the Social Security Administration that he had cut back on his medications because

he was afraid he would run out.  (*Id.* at 55, 174.)  Similarly, Plaintiff stated on his disability report

that he had limited contact with doctors in Colorado due to lack of insurance and money.  (*Id.* at

97.)  In deciding that Plaintiff's non-compliance and failure to seek medical assistance reflected

poorly on his credibility, the ALJ did not discuss these alternative explanations for Plaintiff's

behavior.  (*See id.* at 18.)  This was in error.  One of the Commissioner's own social security

rulings prohibits the ALJ from drawing a negative inference due to a claimant's failure to seek

treatment without first considering the reason for this failure:

> [T]he adjudicator must not draw any inferences about an individual's symptoms
> and their functional effects from a failure to seek or pursue regular medical
> treatment without first considering any explanations that the individual may
> provide, or other information in the case record, that may explain infrequent or
> irregular medical visits or failure to seek medical treatment.  The adjudicator may
> need to recontact the individual or question the individual at the administrative
> proceeding in order to determining whether there are good reasons the individual
> does not seek medical treatment or does not pursue treatment in a consistent
> manner.

Soc. Sec. Ruling 96–7p, 1996 SSR LEXIS 4, at *21 (July 2, 1996); *Miranda v. Barnhart*, 205 F.

App'x 638, 642 (10th Cir. 2005).

Here, the ALJ failed to question Plaintiff regarding any possible reasons for his sporadic

treatment and non-compliance with medication, and nothing in the opinion suggests the ALJ

considered the explanations contained within the record.  (*See* Admin. R. at 282–318.)  Under

Ruling 96–7p, it was improper for the ALJ simply to assume that this behavior was evidence of a

lack of impairment without further inquiry.  *See Miranda*, 205 F. App'x at 642 (finding error

when ALJ failed to indicate that he had considered any alternative explanations for the plaintiff's failure to seek medical treatment).

Although Plaintiff has identified certain infirmities in the ALJ's credibility assessment, I find that, considering all the evidence as well as the deference this court owes to the ALJ in reviewing such determinations, the ALJ's assessment of Plaintiff's credibility is supported by substantial evidence. Although, if weighing the evidence itself, this court may have made a different assessment, I find that Plaintiff's choice to leave his last job for reasons other than his health and his engagement in more than the minimal daily activities, together constitute substantial evidence supporting the ALJ's credibility determination. *See White*, 287 F.3d at 909 (holding that a court may not reweigh the evidence and substitute its judgment for that of the ALJ).

### c.    *Plaintiff's RFC*

Finally, Plaintiff contends the ALJ's RFC assessment was not supported by substantial evidence. (Pl.'s Br. at 20–22.) Specifically, Plaintiff argues the ALJ failed to include any limitations due to Plaintiff's ankle and testicular injuries, as well as Plaintiff's fatigue, shortness of breath, and need to avoid extreme heat, cold, wetness, humidity, fumes, odors, dust, gases, and poor ventilation. (*Id.* at 21; Pl.'s Reply at 3–4.) I address each of Plaintiff's concerns.

First, regarding Plaintiff's limitations from his testicular injury, the ALJ did state that the record showed the injury left Plaintiff with no enduring medical impairment. (Admin. R. at 18.) The facts before the ALJ were that Plaintiff's treating doctor for this injury, Dr. Hering, found that, due to the injury, Plaintiff was permanently precluded from: (1) lifting and carrying over fifty to sixty pounds; (2) repetitive bending, stooping, and carrying; and (3) climbing up and down

engines. (*Id.* at 198.) Additionally, Dr. Fairley also concluded that Plaintiff's testicular injury limited Plaintiff to lifting twenty pounds occasionally and ten pounds frequently, as well as only occasional bending, stooping, crawling, kneeling, and climbing of stairs and ladders. (*Id.* at 262–63.) The ALJ's RFC assessment incorporated all of Drs. Hering and Fairley's testicular-injury-related limitations. He limited Plaintiff to "light work," which "involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds." (*Id.* at 20–21 [citing 20 C.F.R. § 404.1567(b) (2007)].) Further, the ALJ found Plaintiff could only occasionally use ramps and stairs, balance, stoop, kneel, crouch, and crawl. (*Id.* at 19.) Plaintiff has identified no other limitations associated with his testicular injury. (*See* Admin R. at 296 [Plaintiff's testimony that his testicular injury caused him pain upon lifting twenty pounds or more].) Therefore, even if the ALJ erred when he found that the medical evidence did not support a finding that Plaintiff's testicular injury left him with an enduring medical impairment, any such error would be harmless. *See Glass v. Shalala*, 43 F.3d 1397 (10th Cir. 1994) (holding harmless error where evidence issue would not have unfairly affected the ultimate result).

Second, there is no evidence that the ALJ failed to consider Plaintiff's fatigue and shortness of breath in his RFC evaluation. As discussed above, the ALJ specifically noted these complaints in his opinion. (*See Analysis* § 3b, *supra.*) Moreover, the ALJ's limitation of Plaintiff to "light work" that does not involve ladders, ropes, and scaffolds, as well as only occasional balancing, stooping, kneeling, crouching, and crawling, strongly suggests the ALJ gave credence

to Plaintiff's complaints, although perhaps not to the degree Plaintiff had hoped.  (Admin. R. at 19.)

Third, Plaintiff contends the ALJ erred in failing to include the environmental limitations recommended by Dr. Canham, whose opinion the ALJ ostensibly accepted.  (*See id.*)  The Commissioner does not deny these limitations should have been included in the ALJ's RFC, but urges the court to avoid remand by supplying the missing findings to compensate for the ALJ's "inartful decision-writing."  (Def.'s Resp. at 18.)  Because this case is being remanded for other reasons, I leave the ALJ to review Dr. Canham's findings and add them to the RFC determination as appropriate.

Fourth, Plaintiff contends that given his problems with fatigue and concentration, the ALJ should not have placed conclusive reliance on the Medical Vocational Guidelines (the "grids") in determining Plaintiff's capacity for work.  (Pl.'s Br. at 22.)  The Commissioner appears to argue that the ALJ's determination is based at least as much on the VE's testimony as on the grids. (Def.'s Resp. at 17–18.)  I find this argument disingenuous.  It is clearly established that if a plaintiff has a significant non-exertional limitation, the ALJ is precluded from conclusively relying on the grids.  *Saiz v. Barnhart*, 392 F.3d 397, 198–99 (10th Cir. 2004).  The VE plainly did not testify that Plaintiff is capable of all light work.  (Admin. R. at 312–17.)  Instead, the VE identified a number of specific "light" jobs that an individual similarly situated to Plaintiff could purportedly perform.  (*Id.*)  Therefore, in concluding Plaintiff was capable of performing the full range of "light work" — as opposed to certain specific light jobs — the ALJ could not have relied on the VE's testimony. (*See id.* at 21.)   Instead, the ALJ explicitly relied on the grids to meet the

burden of establishing that Plaintiff is capable of the full range of light work.  (*Id*. at 20.)  The problem with this reliance is that, as the ALJ's opinion demonstrates,  Plaintiff's record shows complaints of two allegedly significant non-exertional limitations — fatigue and a decreased ability to concentrate.  (*Id*. at 16, 17, 18.)  Although the ALJ casts doubt on Plaintiff's credibility, nowhere does the ALJ find that these limitations were not significant.  On remand, the ALJ should determine whether these limitations were significant and, if so, may not rely conclusively upon the grids in determining Plaintiff's capacity to work.  *Saiz*, 392 F.3d at 198–99.

Finally, the ALJ found Plaintiff's complaints of ankle pain "have not been document[ed] with objective medical signs and diagnostic findings to establish the existence of enduring medical impairments and the evidence does not establish that they significantly compromise [Plaintiff's RFC]."  (Admin. R. at 18.There is simply no medical source on record suggesting Plaintiff is limited by his ankle injury.  (*See id.*)  Thus, the ALJ was not in error in failing to consider the injury when assessing Plaintiff's RFC.

**4.**   ***Conclusion***

Based on the foregoing it is therefore ORDERED that the Commissioner's decision is REVERSED and REMANDED for proceedings consistent with this opinion.

Dated this 9th day of August, 2007.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge

-27-